**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

---

CampaignZERO, Inc., an Illinois Not for
Profit Corporation,

                  Plaintiff,

    v.

StayWoke, Inc., a Delaware Corporation; and
We The Protesters, Inc., a Delaware
Corporation.

                  Defendant.

Civil Action No. 20-cv-06765

**JURY DEMANDED**

---

## COMPLAINT

Plaintiff, CampaignZERO, Inc. ("Plaintiff") (collectively with its predecessors "CampaignZERO"), by and through its undersigned counsel, for its Complaint against Defendants StayWoke, Inc. ("StayWoke") and We The Protesters, Inc. ("WTP") (collectively, "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.    This is a civil action for (i) unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)); (ii) common law trademark infringement; (iii) violations of the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510) and (iv) cancellation of StayWoke's United States Registration for the CAMPAIGN ZERO mark, arising from Defendants' unauthorized use of Plaintiff's CAMPAIGNZERO trademark in connection with advertising, marketing, promoting, soliciting funding for and offering unlicensed and infringing

services, including analysis, research, policy and legislation advocacy services relating to harm
and death caused by policing practices.

2.      Plaintiff is a not-for-profit entity that is dedicated to promoting patient safety and
eradicating preventable harm that occurs to patients during hospital stays through its
CAMPAIGNZERO branded programs and services.

3.      Defendants' unauthorized use of the CAMPAIGN ZERO trademark is not only
likely to cause consumer confusion. In fact, it has already caused, and is continuing to cause,
consumers to confuse Defendants and their services with CampaignZERO and its goods and
services. For example, (i) Plaintiff has received numerous email messages, numerous voicemail
messages and multiple donation checks intended for Defendants; (ii) a health advocacy website
seeking to link to the CampaignZERO, Inc. website mistakenly linked to the WTP website, located
at joincampaignzero.com; and (iii) a Facebook user posted on Defendants' Facebook page (which
is titled "Campaign Zero") expressed confusion between Defendants' services and Plaintiff's
services while trying to set up a Facebook fundraiser stating: "the one that shows up when I try to
create a FB Fundraiser for Campaign Zero is called campaignzero from Lake Forest, IL. Is that
correct?"

4.      Such confusion has harmed and is continuing to harm Plaintiff and the goodwill in
its CAMPAIGNZERO trademark. For example, one significant hospital business partner recently
paused work on the website page it was developing to offer Plaintiff's services and resources for
hospital patients and families due to the risk that it will confuse their patients and others who visit
their site into believing that there is an affiliation with Defendants' services. This type of confusion
diverts patients and donors seeking CampaignZERO's services and information to WTP and

causes people to mistakenly believe that CampaignZERO's services come from or are affiliated with WTP and its services, programs and policies.

5.     To prevent further harm to its brand, its mission and its organization, and to remedy the harm that continues to occur with increasing frequency as a result of the Defendants' infringing activity, CampaignZERO seeks a declaratory judgment of infringement, injunctive relief and recovery of damages, costs and attorneys' fees and such other relief as the Court deems just and proper.

## PARTIES

6.     Plaintiff is a corporation organized under the laws of the State of Illinois with its principal place of business located at 736 North Western Avenue, Lake Forest, IL 60045.

7.     Defendant, StayWoke, Inc., is a corporation organized under the laws of Delaware, with its principal place of business located at 160 Greentree Drive, Suite 101, Dover, Delaware.

8.     Defendant, We The Protesters, Inc., is a corporation organized under the laws of Delaware, with its principal place of business located in New York, New York.

## JURISDICTION AND VENUE

9.     This action arises under the laws of the United States and under Illinois law.

10.     This action is brought pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); 815 ILCS 510; and Illinois common law, including trademark infringement and unfair competition.

11.     This Court has personal jurisdiction over Defendants at least because, upon information and belief, Defendants operate the website www.joincampaignzero.org and the "Campaign Zero" Facebook page through which Defendants advocate, market their services and solicit online donations, all using the CAMPAIGN ZERO mark throughout the United States,

including this judicial district in the State of Illinois. In addition, Defendants' website actively solicits email addresses and solicits policy suggestions through interactive online portals under the CAMPAIGN ZERO trademark. Furthermore, Defendants' infringing use of the CAMPAIGN ZERO trademark in connection with such activities has caused harm to CampaignZERO in this judicial district.

12. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331, 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367. This Court also has subject matter jurisdiction because there is complete diversity between Plaintiff and all Defendants and because the amount in controversy exceeds $75,000.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is doing business in this judicial district, and a substantial part of the events giving rise to the claims occurred in this district.

## BACKGROUND FACTS

### Plaintiff's Business and Trademark

14. Plaintiff is a not-for-profit organization dedicated to educating hospital patients about preventable harm and common hospital errors, as well as ensuring that every patient is fully supported during recovery at home. CampaignZERO seeks to eliminate preventable harm that occurs during hospital stays through the dissemination and use of patient and care provider checklists and tools.

15. CampaignZERO was founded by Karen Curtiss.

16.    In 2005 Ms. Curtiss' father, Bill Aydt, underwent surgery for a lung transplant. The surgery was successful and his pulmonologist reported that he would be back to golfing within a matter of months.

17.    During his recovery, Mr. Aydt fell attempting to return from the bathroom when he became tired of waiting for a nurse to escort him back to his hospital bed. That fall derailed his recovery, led to a host of complications that eventually caused fatal infections, which killed Mr. Aydt in the hospital.

18.    A few months later, Ms. Curtiss' husband nearly died from "routine surgery" and post-operative care that was riddled with avoidable medical error.

19.    Spurred to action by the tragedy of her father's death and near tragedy from her husband's hospitalization, Ms. Curtiss began her mission to eradicate preventable medical care harm. Ms. Curtiss published a guidebook titled "Safe & Sound in the Hospital" advising people how to help protect their loved ones from preventable infections and accidents that can occur in hospitals.

20.    Ms. Curtiss also co-authored a book titled "Safe & Sound Nursing Tools for Family Engagement in Patient-Centered Care," which provides guidance on developing simple, practical partnership skills that lead to better patient outcomes, lower costs and lower readmissions. This book is endorsed by the Quality and Safety Education for Nurses, which is a leading association for patient safety education.

21.    In 2009, Ms. Curtiss founded the CampaignZERO organization; and, CampaignZERO began using the CAMPAIGNZERO trademark in connection with its programs to advocate for reduction in preventable medical harm.

22.     Through Ms. Curtiss' relentless efforts, CampaignZERO's presence, reach and impact on the lives of patients has steadily grown from 2009 to the present.

23.     On February 4, 2009, Ms. Curtiss formed CampaignZero, LLC, an entity organized under the laws of Illinois.

24.     Shortly thereafter, on February 19, 2009, CampaignZERO registered the domain name campaignzero.com.

25.     By at least as early as August 28, 2009, CampaignZERO had launched a website at the campaignzero.com domain name that displayed a version of the CAMPAIGNZERO trademark.  A portion of an archived page from the www.campaignzero.com website archived August 28, 2009 is reproduced below:

## Our Mission

CampaignZERO delivers safety strategies to hospitals, patients and their advocates to prevent medical errors.

We know that advocates, especially, can be empowered to help zero out those errors – and we're here to help guide the way.

*CampaignZERO's* mission is to foster collaboration among patients, their advocates and healthcare team.  We believe this will result in better quality care and support for medical staff, especially nurses who serve on the front line in every hospital.

We are committed to learning and improving together as a community deeply concerned about safe healthcare for all.

CampaignZERO has three goals:

- Prevent harm and death caused by preventable medical errors
- Help lower the costs of healthcare for all, and

26.     At least as early as October, 2009, CampaignZERO had also begun operating a Facebook page, Facebook.com/CampaignZERO, using the CAMPAIGNZERO trademark to advocate for reduction in medical care harm. That Facebook page now has approximately 1,355 followers.

27.     At least as early as June 2009, CampaignZERO had also begun operating the Twitter account, Twitter.com/CampaignZERO, under the CAMPAIGNZERO trademark.  That Twitter account now has approximately 3,046 followers.

28.     On November 4, 2009, CampaignZERO issued its first press release, prominently displaying the CAMPAIGNZERO trademark in the letterhead.  That press release also directed readers to the campaignzero.com website.

29.     On February 3, 2010, CampaignZERO registered the domain name campaignzero.org.

30.     At least as early as March 23, 2010, CampaignZERO launched a website at the campaignzero.org domain name, which prominently displayed the CAMPAIGNZERO trademark, along with the ™ designation providing notice of CampaignZERO's rights in the CAMPAIGNZERO trademark as shown below:



31.     After it was launched, the campaignzero.org website was available and remained available continuously to patients, family members of patients and caregivers nationwide. The

website also provided CAMPAIGNZERO branded patient safety checklists for download for patients and family members who provided their email address to use to care for and advocate for loved ones during hospital stays.



32.     The campaignzero.com domain now immediately redirects Internet users to the website at the campaignzero.org domain name.

33.     As a result of CampaignZERO's tireless efforts promoting its educational programs and services continuously since 2009, CampaignZERO began to develop considerable awareness and recognition on both a regional and national scale by as early as 2010.   Notably, CampaignZERO has received local and national press coverage, including media mentions and

has been featured in news articles in publications such as USA Today[1], Chicago Tribune[2], Pro Publica[3], and the Washington Post[4], to name a few.

34.     Since its adoption and launch, CampaignZERO has continued to expand its use and promotion of the CAMPAIGNZERO mark throughout the nation.  As early as 2011, Ms. Curtiss was invited to speak at medical and nursing conferences throughout the country on the topic of patient safety and preventing medical care harm in which she was introduced and identified as the founder of CampaignZERO. These conferences include, but are not limited to, the following:

| Year | Event | Location |
|------|-------|----------|
| 2011 | Chicagoland Patient Safety Summitt | Chicago, IL |
| 2011 | National Association of Healthcare Advocacy (NAHAC) Annual Meeting | Berkeley, CA |
| 2012 | Health Watch USA Conference for Health Care Transparency and Patient Advocacy, | Lexington, KY |
| 2012 | Maryland Hospital Association Annual Meeting | Baltimore, MD |
| 2013 | California Association of Nursing Leaders Annual Conference, Palm Springs | Palm Springs, CA |
| 2013 | University of Texas Medical Branch | Galveston, TX |
| 2013 | Dallas Ft. Worth Hospital Council Foundation Patient Safety Awareness Week Annual Meeting | Dallas, TX |
| 2013 | Telligen Annual Meeting, Des Moines | DesMoines, IA |
| 2013 | Quality Insights Renal Network Annual Meeting | Newark, NJ |
| 2013 | Patient Safety and Quality Nursing Education Forum | Pomona, CA |
| 2013 | Quality and Safety Education for Nurses Annual Meeting (QSEN) | Atlanta, GA |
| 2013 | New America Foundation HealthCare Roundtable | New York, NY |
| 2014 | Wyoming Hospital Association Annual Meeting | Cheyenne, WY |
| 2014 | Collaborative Alliance of Nursing Outcomes (CALNOC Annual Meeting, Seattle | Seattle, WA |

[1] Peter Eisler, Hospital bug twice as deadly as feared, USA TODAY, August 16, 2012, https://usatoday30.usatoday.com/USCP/PNI/Front%20Page/2012-08-16-HOSPITALINFECTIONS_ST_U.html
[2] Bonnie Miller Rubin, What you need to know before you or a loved one go into the hospital, CHICAGO TRIBUNE, August 15, 2012, https://www.chicagotribune.com/lifestyles/ct-xpm-2012-08-15-ct-x-0815-expert-curtiss-20120815-story.html
[3] Blair Hickman, A Patient's Guide: How To Stay Safe In a Hospital, PRO PUBLICA, February 4, 2013, https://www.propublica.org/article/a-patients-guide-how-to-stay-safe-in-a-hospital
[4] Roni Caryn Rabin, Hospitalized patients too often have no single physician in charge of their care, WASHINGTON POST, April 29, 2013, https://www.washingtonpost.com/national/health-science/hospitalized-patients-too-often-have-no-single-physician-in-charge-of-their-care/2013/04/29/2fd568ec-9bb7-11e2-9bda-edd1a7fb557d_story.html

| Year | Event | Location |
|------|-------|----------|
| 2014 | Annual Nursing Research Conference | Long Beach, CA |
| 2014 | The Center for Health Affairs/NEONI Conference | Cleveland, OH |
| 2014 | Carol Bromley Biennial APIC Conference | Anchorage, AK |
| 2014 | Sharp Healthcare Annual Patient Safety Meeting | San Diego, CA |
| 2015 | University of Texas Medical Branch | Galveston, TX |
| 2015 | Dallas Ft. Worth Hospital Council Foundation Patient Safety Awareness Week Annual Meeting | Dallas, TX |
| 2015 | Quality and Safety Education for Nurses Annual Meeting (QSEN) | Cleveland, OH |
| 2015 | Medical-Surgical Nursing Conference, UCSF Medical Center and Benoit Children's Hospital | San Francisco, CA |
| 2015 | Motion Picture and Television Fund (MP) Annual Women's Conference | Los Angeles, CA |
| 2015 | Peace Health Patient Safety Symposium | Ketchikan, AK |
| 2015 | Providence Alaska Medical Center | Anchorage, AK |
| 2015 | Methodist Mansfield Medical Center Annual Leadership Retreat | Mansfield, TX |
| 2016 | Carol Bromley Biennial APIC Conference | Anchorage, AK |
| 2016 | Patient Safety, Science and Technology Summit, Irvine | Irivine, CA |
| 2016 | University of Vermont Patient Safety Week Summit | Burlington, VT |
| 2017 | University of Texas Medical Branch | Galveston, TX |
| 2017 | Quality and Safety Education for Nurses Annual Meeting (QSEN) | Austin, TX |
| 2017 | Washington State Health Advocacy Association (WASHAA) Annual Meeting | Seattle, WA |
| 2017 | New Jersey Hospital Association Annual Meeting | Princeton, NJ |
| 2018 | Quality and Safety Education for Nurses Annual Meeting (QSEN) | San Diego, CA |
| 2018 | Patient Safety, Science and Technology Summit, Irvine | Irivine, CA |
| 2018 | Memorial Health Annual Nursing Research Conference | Long Beach, CA |
| 2018 | Annual Planetree Patient Educatio and Safety Conference | Baltimore, MD |
| 2019 | International Conference of Patient Advocacy (ICOPA), Chicago | Chicago, IL |

35.     CampaignZERO has also partnered with hospitals to provide workshops for medical professionals on reducing medical care harm to patients.  As part of those workshops, CampaignZERO provides its CAMPAIGNZERO branded checklists and presents information regarding reduction of medical care harm under the CAMPAIGNZERO trademark.  Prior to 2015, CampaignZERO had conducted workshops at hospitals in New Jersey, Alaska, Texas and Washington State.

36.     Since 2015, CampaignZERO has continued to conduct such workshops, including in hospitals throughout California and in Florida, Indiana, Maryland, Massachusetts, Minnesota, Nebraska, Ohio and Pennsylvania.  CampaignZERO has conducted such workshops at some of the nation's most well respected hospital systems, including Johns Hopkins Medicine, Boston Medical Center, Kaiser Permanente, University of Texas Medical Branch and Providence Medical Center, among many others.

37.     CampaignZERO also has promoted its hospital and patient care checklists and services through community education and presentations by patient advocates and others in the medical industry. Since at least as early as 2011, CampaignZERO has provided these speakers with training and scripts for these presentations as well as audience handouts and marketing materials bearing the CAMPAIGNZERO mark the speakers use in connection with the presentations. These speakers present in their respective metropolitan areas on a nationwide basis. Prior to 2015, CampaignZERO's speaker network included and presentations were given in Flagstaff, Phoenix, Santa Barbara, Los Angeles, Quad Cities, Chicago, New York City, Seattle, Orlando, Birmingham, Richmond, Milwaukee, Atlanta, Charleston, Savannah, Nashville, and Fort Collins.  Since 2015, CampaignZERO has continued to expand its network of advocates providing and disseminating its presentations and branded materials throughout the United States.

38.     While CampaignZERO, LLC was involuntarily dissolved in 2015, the CAMPAIGNZERO mark has been used continuously since its adoption in 2009.

39.     In 2016, CampaignZero, LLC was formed under the laws of South Carolina.

40.     In 2019, CampaignZero, Inc. was formed as a not-for-profit corporation organized under the laws of Illinois.  CampaignZero, Inc. acquired all rights in and to the CAMPAIGNZERO trademark.

41.     Due to CampgainZERO's long term and extensive use and promotion of its goods and services for over a decade across the country, CampaignZERO possesses significant common law rights in the CAMPAIGNZERO trademark.

42.     As a result of CampaignZERO's excellent reputation, diligent promotion and use of the CAMPAIGNZERO mark for over a decade, the CAMPAIGNZERO mark has developed a public recognition of, and association with, CampaignZERO as the source of CampaignZERO's goods and services offered under the CAMPAIGNZERO mark.

43.     Plaintiff has invested substantial time, money, and other resources promoting the CAMPAIGNZERO mark and CAMPAIGNZERO branded goods and services to individuals nationwide, including in Illinois.  Plaintiff prominently displays its CAMPAIGNZERO mark on its website, its Facebook and Twitter accounts, its checklists, and letterhead in connection with its goods and services.

44.     Based on this public recognition and use of the trademark in the United States, including in Illinois, CampaignZERO has developed extensive and valuable goodwill in its CAMPAIGNZERO mark and had developed such goodwill long before 2015.

45.     As a result, the CAMPAIGNZERO mark has become associated exclusively with Plaintiff in the minds of consumers and had become so long before 2015.

<u>Defendants' Infringement, False Advertising, and Unfair Competition</u>

46.     StayWoke, Inc. is a not-for-profit organization that describes itself as a "digital accelerator that engages thousands of learners, builders, and activists in the work of advancing equity and justice in America."

47.     On August 23, 2015, StayWoke, Inc. filed a federal trademark application to register the trademark CAMPAIGN ZERO in class 35 for use in connection with "Public advocacy

to promote awareness of Social Justice." In that trademark application, StayWoke claimed that it first used the CAMPAIGN ZERO trademark in commerce on August 21, 2015.

48. On information and belief, Defendants or one of Defendants' agents registered the domain name joincampaignfinance.org on August 18, 2015.

49. On information and belief, Defendants or its agents registered the domain name joincampaignzero.org (instead of campaignzero.com or campaignzero.org) because they discovered those domain names were unavailable and registered to CampaignZERO. Thus, Defendants were aware of Plaintiff's registration of the campaignzero.com and campaignzero.org domain names as well as Plaintiff's use of the CAMPAIGNZERO trademark and Plaintiff's claim of trademark rights in the term CAMPAIGNZERO as set forth on its website. Since the launch of the campaignzero.com and campaignzero.org domain names in 2009, Plaintiff has always displayed the ™ on the right shoulder of the CAMPAIGNZERO mark signifying to the world that it was claiming trademark rights in that slogan.

50. On information and belief, despite its awareness and knowledge of Plaintiff's use of the CAMPAIGNZERO trademark, StayWoke proceeded to adopt and apply to register the term CAMPAIGN ZERO for use in connection with its social justice advocacy and awareness promotion services.

51. To support its trademark application, Defendant, StayWoke, submitted a printout of a page of the website located at joincampaignzero.org as a specimen purportedly showing its use of the CAMPAIGN ZERO trademark in commerce. A portion of that multi-page specimen is shown below. Notably, the most prominent reference on the web page is to the mark CAMPAIGN ZERO with no reference to "Join Campaign Zero".



52. The joincampaignzero.org website identifies "Campaign Zero" as "a project of the non-profit 501(c)(3) organization, WeTheProtesters."

53. Defendants have displayed and continue to display the CAMPAIGN ZERO mark on their website in connection with their solicitation of donations for their non-profit organization, WTP.

54. Defendants also have used and continue to use the CAMPAIGN ZERO mark on their website to advocate for changes to reduce unnecessary harm and death caused during policing.

55. Defendants also have used and continue to use the CAMPAIGN ZERO mark on the Facebook page, https://www.facebook.com/joincampaignzero/ in connection with solicitation

of donations for WTP and to advocate for policy changes to reduce unnecessary harm and death caused during policing. Defendants' Facebook page is titled "Campaign Zero" and the Campaign Zero mark appears throughout the page. Indeed, neither the title of the page nor the "About" section mention WTP. Defendants' Facebook page also provides functionality for users to create their own Facebook campaigns to solicit donations using the CAMPAIGN ZERO mark. Such campaigns falsely and deceptively identify "Campaign Zero" as a "US 501(c)(3) Nonprofit Organization" as shown below:



56.     Defendants' CAMPAIGN ZERO mark is identical in appearance, sound, and commercial impression to Plaintiff's CAMPAIGNZERO mark.

57.     Defendants' domain name, www.joincampaignzero.org, incorporates the highly similar, infringing use of "CAMPAIGNZERO," to promote services in the same market as Plaintiff. Representative examples of Defendant's use of the CAMPAIGN ZERO mark on its website is attached as **Exhibit A**.

58.     Representative examples of Defendants' use of the CAMPAIGNZERO mark on their social media pages and handles are attached as **Exhibit B.**

59.     Defendants' services provided under the CAMPAIGN ZERO mark are highly similar and/or directly related to Plaintiff's goods and services offered under its CAMPAIGNZERO trademark.

60.     Like Plaintiff, Defendants, Stay Woke and WTP, are each non-profit organizations, providing services to reduce unnecessary harm and death to members of the public, providing public advocacy and education services, and whose organizations solicit donations to support their respective missions.

61.     Defendants' use of the CAMPAIGN ZERO mark, in interstate commerce, is likely to cause customer confusion with Plaintiff and its established CAMPAIGNZERO trademark.

62.     Defendant's unlawful use of the CAMPAIGN ZERO trademark as described herein also has resulted in actual customer confusion in the marketplace.

63.     Plaintiff has received multiple communications apparently intended for Defendants.

64.     Specifically, Plaintiff has recently received several voice mail and email messages and answered numerous live calls from people seeking to contact Defendants.

65.     On or around June 19, 2020, a Facebook user posting on Defendants' Campaign Zero titled Facebook page expressed confusion between Defendants' services and CampaignZERO's services while trying to set up a Facebook fundraiser stating: "the one that shows up when I try to create a FB Fundraiser for Campaign Zero is called campaignzero from Lake Forest, IL. Is that correct?"

66. In or around August and September of 2020, Plaintiff received three donation checks sent to its address, but intended to be sent to "We The Protesters" and "DeRay McKesson" (a founder of StayWoke, Inc.).

67. A Registered Nurse and patient advocate who maintains a list of health care "Resources" on her website located at https://www.melyndaruckels.com/resources, on information and belief, mistakenly included the link to Defendants' website at joincampaignzero.org instead of Plaintiff's website at campaignzero.org, thereby directing users seeking information about Plaintiff's services to the wrong website.

68. This actual confusion has drastically escalated over the past two to three months.

69. Such actual and likely confusion has materially harmed and is continuing to materially harm Plaintiff, the goodwill that it has established in its CAMPAIGNZERO trademark and the ability of the CAMPAIGNZERO trademark to serve as a source indicator of Plaintiff's services.

70. For example, one hospital system with which Plaintiff has partnered for nearly a decade paused work on the hospital website page it was developing to offer CampaignZERO's services and resources for hospital patients and families due to the risk that it would confuse their patients and others who visit their site into believing that there is an affiliation with Defendants' or their services.

71. Plaintiff's founder, Ms. Curtiss, has had to discontinue use of her email address, Karen@CampaignZERO.org because, over the past few months, emails from that email address have repeatedly been identified as a SPAM by recipients' SPAM filters. Ms. Curtiss' web consultants have advised her that the email address is likely being identified as SPAM because the domain "campaignzero.org" has generated confusion. This has harmed Plaintiff's ability to reach

its customers and partners through email communications. The identification of emails from this domain also has had a deleterious effect on Plaintiff's reputation and the CAMPAIGNZERO brand.

72.     The confusion caused by Defendants' adoption of the confusingly similar CAMPAIGN ZERO brand has done irreparable harm to CampaignZERO and has undone years of brand development by Ms. Curtiss and CampaignZERO.

73.     Upon information and belief, the Defendants have experienced similar instances of actual confusion, which is what likely prompted Bobak Emanian of Defendant, WTP, to reach out to Ms. Curtiss on July 21, 2020 via LinkedIn requesting to purchase CampaignZERO's domain name (www.campaignzero.org). While Mr. Emanian promised to have his "team" follow up with CampaignZERO's counsel, Mr. Michael Carrillo, to discuss the purchase of the domain name, no one ever contacted Ms. Curtiss or Mr. Carrillo further.

<u>PLAINTIFF'S GOOD FAITH EFFORTS TO AVOID LITIGATION</u>

74.     Plaintiff has made numerous attempts to resolve the ongoing harm to its business and trademark without resorting to litigation; however, such attempts have been unsuccessful.

75.     As soon as Plaintiff began receiving misdirected correspondence and donations intended for Defendants, Plaintiff forwarded the misdirected correspondence and donations to Defendants and asked that they reach out to the confused consumers to clear up the confusion.

76.     CampaignZERO also posted messages multiple times on its social media accounts stating that it was not affiliated with Defendants in an effort to try to reduce confusion.

77.     On September 11, 2020, after a significant and pervasive escalation in confusion caused by Defendants' use of the CAMPAIGN ZERO trademark, Plaintiff, through counsel, sent a letter to Defendant, StayWoke, Inc., notifying it of Plaintiff's superior rights in the

CAMPAIGNZERO mark and its concern that Defendants' use of the CAMPAIGN ZERO mark was likely to cause consumer confusion, causing actual confusion and harming Plaintiff. Therein, Plaintiff asked Defendants to cease all use of the CAMPAIGN ZERO trademark, including in the joincampaignzero.org domain name and to voluntarily abandon its U.S. trademark registration for the CAMPAIGN ZERO trademark. Plaintiff requested a response by September 22, 2020.

78.     It was not until late in the afternoon on September 21, 2020 that counsel for CampaignZERO, Mr. Carrillo, received a response to the September 11th cease and desist letter. Mr. Matthew Melewski left a voicemail message and sent an email to Mr. Carrillo identifying himself as "General Counsel of Campaign Zero" and requested that Mr. Carrillo call him back.

79.     Mr. Carrillo contacted Mr. Melewski on September 23, 2020 to discuss the CampaignZERO matter. During that discussion, Mr. Melewski requested that Mr. Carrillo confer with his client and formulate an initial demand for Defendants' consideration.

80.     CampaignZERO considered the request. Then, in a good faith effort to resolve the matter without the need for court intervention, Mr. Carrillo emailed Mr. Melewski on October 2, 2020, requesting a time to discuss CampaignZERO's proposal. Thereafter, the parties had a discussion on October 4, 2020 concerning CampaignZERO's settlement proposal to the Defendants. Mr. Melewski informed Mr. Carrillo that he would take the proposal to his client and get back to Mr. Carrillo with a counterproposal shortly.

81.     Mr. Melewski emailed Mr. Carrillo on October 16, 2020, requesting a time to discuss the Defendants' counterproposal. The parties convened a further settlement discussion on October 19, 2020, where Mr. Melewski provided the Defendants' counterproposal. CampaignZERO considered Defendants' counterproposal thereafter.

82. Ultimately, CampaignZERO determined that a resolution short of having to litigate the matter was not possible at this time.

83. Notwithstanding Plaintiff's objections and Defendants' knowledge of Plaintiff's senior trademark rights, Defendants continue to use the CAMPAIGN ZERO mark as a designation of Defendants' services and this continues to create actual confusion in the marketplace.

84. Defendant's infringement is knowing and willful.

85. Plaintiff has not authorized, licensed, or otherwise endorsed Defendants' use of its CAMPAIGN ZERO trademark.

86. Defendants' use of the CAMPAIGN ZERO mark in connection with their services is likely to cause confusion, mistake, and deception among consumers, who are likely to believe that Defendants' services are associated or connected with, or approved or authorized by Plaintiff, or that Defendants' services originate from the same source as Plaintiff's services, when that is not the case.

87. Defendants' use of the CAMPAIGN ZERO mark in connection with their services is also likely to cause reverse confusion, mistake, and deception among consumers who are likely to believe that Plaintiffs' goods and services are associated or connected with Defendants, or that Plaintiff's goods and services originate from the same source as Defendants' services, when that is not the case.

88. Defendants' unauthorized use of the CAMPAIGN ZERO mark in the manner described above restricts Plaintiff's ability to control the nature and quality of the goods and services provided under the CAMPAIGNZERO mark, and places the valuable reputation and goodwill of Plaintiff in the hands of Defendants, over which Plaintiff has no control.

89. All of the foregoing acts of Defendants have caused, and unless restrained by this Court, will continue to cause serious and irreparable injury and damage for which Plaintiff has no adequate remedy at law.

## COUNT I

### UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN, AND FALSE ADVERTISING
### (LANHAM ACT, 15 U.S.C. § 1125)
### (Against All Defendants)

90. Plaintiff realleges paragraphs 1-89 of this Complaint as though fully set forth herein.

91. Defendants' conduct complained of herein constitutes federal unfair competition, false designation of origin, and false advertising pursuant to 15 U.S.C. § 1125(a).

92. Defendants' intentional and unlawful use of the CAMPAIGN ZERO mark in interstate commerce is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of Defendant by Plaintiff and therefore constitutes false designation of origin and false advertising, in violation of 15 U.S.C. § 1125(a).

93. Defendants' activities as described above constitute the use of false designations of origin in commerce, and false and misleading descriptions and representations of fact, all in violation of 15 U.S.C. § 1125(a).

94. On information and belief, Defendants have made and will continue to derive substantial donations and gains to which they are not in law or equity entitled.

95. On information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

96.     As a direct and proximate result of Defendants' knowing, deliberate, and willful infringement of the CAMPAIGNZERO trademark, Plaintiff has suffered and will continue to suffer harm to its business, reputation, and goodwill.

97.     As a result of these wrongful acts, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the CAMPAIGN ZERO mark, or any marks confusingly similar thereto, in accordance with 15 U.S.C. § 1116, and to recover all damages that Plaintiff has sustained and will sustain, and all gains, profits, and advantages obtained by Defendants as a result of their infringing acts in an amount not yet known, as well as the costs of this action, attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(a), and an injunction ordering the destruction of all infringing articles pursuant to 15 U.S.C. § 1118.

## COUNT II

**COMMON LAW TRADEMARK INFRINGEMENT**
**(Against All Defendants)**

98.     Plaintiff realleges paragraphs 1-89 of this Complaint as though fully set forth herein.

99.     Defendants' conduct complained of herein constitutes trademark infringement under the common law of the State of Illinois.

100.    Based on its prior and continuous use of its CAMPAIGNZERO mark, Plaintiff owns and enjoys common law rights in the State of Illinois and elsewhere in the United States to its CAMPAIGNZERO mark in connection with its goods and services described herein and similar goods and services.

101.    Plaintiff used the CAMPAIGNZERO mark in connection with its goods and services in the United States, including in the State of Illinois, long before Defendants began using the CAMPAIGN ZERO mark.

22

102.    Defendants' use of the CAMPAIGN ZERO mark without authorization from Plaintiff in connection with their services constitutes an infringement of Plaintiff's common law rights in the CAMPAIGN ZERO mark.

103.    Defendants have unfairly competed with Plaintiff by the acts complained of, have done so intentionally, and have caused and, unless enjoined by this Court, will continue to cause irreparable harm, damage and injury to Plaintiff, which has no adequate remedy at law.

104.    Plaintiff has been harmed by Defendants' wrongful acts.

105.    Plaintiff is therefore entitled to injunctive relief, recovery of actual damages, treble damages, costs, and reasonable attorneys' fees.

<u>**COUNT III**</u>

**DECEPTIVE TRADE PRACTICES VIOLATING THE ILLINOIS UNIFORM
DECEPTIVE TRADE PRACTICES ACT
(815 ILCS 510)
(Against All Defendants)**

106.    Plaintiff realleges paragraphs 1-89 of this Complaint as though fully set forth herein.

107.    By virtue of its common law rights in the CAMPAIGNZERO trademark, Plaintiff has the exclusive right to use the CAMPAIGNZERO mark in commerce, throughout the United States, including in Illinois, in connection with its services, and Plaintiff acquired that exclusive right long before the acts of Defendants described herein.

108.    With the full knowledge of Plaintiff's CAMPAIGNZERO mark, Defendants have used the CAMPAIGN ZERO mark in connection with their services to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship or approval of Defendants' services and Plaintiff and between Plaintiff's services and Defendants.

109.    Defendants' use of the CAMPAIGN ZERO mark in connection with their services has also caused a likelihood of confusion or of misunderstanding as to whether there is an affiliation, connection or association between Defendants and Plaintiff.

110.    Such conduct violates 815 ILCS 510/2(a)(2) and (3).

111.    Defendants' deceptive use of the CAMPAIGN ZERO mark has caused and is likely to cause damage to Plaintiff and the goodwill associated with its CAMPAIGNZERO trademark.

112.    Defendants' deceptive use of the CAMPAIGN ZERO mark has been willful and with knowledge of Plaintiff's prior use of and rights in the CAMPAIGNZERO trademark.

113.    As a result of these wrongful acts, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the CAMPAIGNZERO mark and any confusingly similar marks, and costs and attorneys' fees based on Defendants' intentional conduct, in accordance with the Illinois Consumer Protection Act, 815 ILCS 510/3.

## COUNT IV
## CANCELLATION OF UNITED STATES REGISTRATION NO. 4,950,792
## (LANHAM ACT, 15 U.S.C. § 1119)
## (Against StayWoke, Inc.)

114.    Plaintiff realleges paragraphs 1-89 of this Complaint as though fully set forth herein.

115.    This is a claim for cancellation of Defendant StayWoke, Inc.'s United States Registration No. 4,950,792 for the CAMPAIGN ZERO mark under 15 U.S.C. § 1119.

116.    Plaintiff has continuously used the CAMPAIGNZERO trademark in interstate commerce and established rights in its CAMPAIGNZERO trademark prior to any actual or constructive use of the CAMPAIGN ZERO trademark by StayWoke.

117.    StayWoke's registration of the CAMPAIGN ZERO in connection with the services recited in the application, "Public advocacy to promote awareness of Social Justice," is likely to

cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of StayWoke and of StayWoke's services.

118.    As a result, Plaintiff is being harmed by the continued registration of the CAMPAIGN ZERO mark (Reg. No. 4,950,792).

119.    In view of the foregoing, StayWoke's registration for the CAMPAIGN ZERO mark should be cancelled in its entirety pursuant to 15 U.S.C. § 1119.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter Judgment finding, concluding, and declaring:

A.    That Defendants' use of the CAMPAIGN ZERO mark constitutes common law trademark infringement, unfair competition, false designation of origin, and false advertising under 15 U.S.C. § 1125(a), a violation of the Illinois Uniform Deceptive Trade Practices Act, and that Defendant has been unjustly enriched as a result of its infringement;

B.    That the Court issue an order directing the United States Patent and Trademark Office to cancel StayWoke's United States Registration No. 4,950,792 for the CAMPAIGN ZERO mark in its entirety;

C.    That Defendants and their successors, affiliates, assigns, officers, directors, agents, employees and attorneys, and all persons or entities in active concert, participation, or privity with any of them, be preliminarily and permanently enjoined, pursuant to 15 U.S.C. §1116 and applicable state laws, from:

1.    Using the CAMPAIGN ZERO mark, including all formative variations, or any other names, marks or slogans in connection with not-for-profit services and related goods and services that are likely to cause confusion, mistake

or deception with respect to Plaintiff's CAMPAIGNZERO mark;

2. Operating under any domain name or social media accounts containing the CAMPAIGNZERO mark or confusingly similar marks, including all formative variations, or any other names, marks or slogans;

3. Doing any other act or thing likely to induce the mistaken belief that Defendants or Defendants goods and services are in any way affiliated, connected, or associated with Plaintiff or its goods and services, or doing any other act or thing likely to cause confusion with respect to the Plaintiff's CAMPAIGNZERO mark;

D. That, pursuant to 15 U.S.C. § 1118, Defendants be ordered to deliver up for destruction all materials, including, but not limited to, labels, packaging, brochures, advertisements, literature, promotions, displays, catalogs, letterhead, videos, recorded interviews, work products and all other matter in the custody or under the control of Defendants or their agents bearing the CAMPAIGN ZERO mark or any confusingly similar marks;

E. That Defendants be ordered to notify all customers, donors, vendors, and authorized agents of this Judgment;

F. Surrender and transfer to Plaintiff all domain names and/or social media accounts containing the CAMPAIGN ZERO mark, including all formative variations, or any other names, marks or slogans;

G. That Defendants be ordered to close any and all accounts on third party sites where it uses the CAMPAIGN ZERO mark, and be ordered to assist Plaintiff, if needed, in working with third-party sites to remove all content displaying or referencing in any

way the CAMPAIGN ZERO mark in relation to Defendants or their services;

      H.     That, pursuant to 15 U.S.C. § 1116, Defendants be directed to file with this Court and to serve on Plaintiff, within thirty (30) days after entry of the injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

      I.     That Defendants be directed to serve on Plaintiff, within fifteen (15) days after entry of the injunction, a report in writing and under oath identifying payments, correspondence, communications or misdirected donations in its possession intended for Plaintiff as evidenced by EIN number or other indication that the same was intended for Plaintiff.

      J.     That Defendants be directed to provide a complete accounting to Plaintiff, within thirty (30) days after entry of the injunction, for any and all donations received in relation to Defendants' solicitation of donations under the CAMPAIGN ZERO mark from inception through the date of the injunction;

      K.     That Plaintiff be awarded actual compensatory damages and punitive damages, in an amount to be determined at trial;

      L.     That Defendants be ordered to pay treble damages pursuant to 15 U.S.C. § 1117 for their knowing, intentional, and willful violations of federal law;

      M.     That Plaintiff be awarded all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. § 1117(a) and the Illinois Deceptive Trade Practices Act 815 ILCS 510;

      N.     That Plaintiff be awarded any such other and further relief as this Court

deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues triable of right by jury.

Dated: November 13, 2020    Respectfully submitted,

CampaignZERO, Inc.

/s/Michael A. Carrillo
Michael Carrillo (Illinois Bar No. 62368915)
John A. Cullis (Illinois Bar No. 6273415)
Lawrence E. James (Illinois Bar No. 6289823)
Joshua S. Frick (Illinois Bar No. 6292843)
Megan Krivoshey (Illinois Bar No. 6324823)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: 312-357-1313
Email: Michael.Carrillo@btlaw.com
Email: John.Cullis@btlaw.com
Email: Lee.James@btlaw.com
Email: Joshua.Frick@btlaw.com
Email: Megan.Krivoshey@btlaw.com

*Attorneys for the Plaintiff*