IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CampaignZERO, Inc., an Illinois Not-for Profit Corporation, | Civil Action No. 20-cv-06765 |
| Plaintiff, | |
| v. | **JURY DEMANDED** |
| StayWoke, Inc., a Delaware Corporation; and We The Protesters, Inc., a Delaware Corporation; | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff, CampaignZERO, Inc. ("Plaintiff"), is a not-for-profit organization, which since 2009 has offered services and goods under the CAMPAIGNZERO mark aimed at educating hospital patients about preventable harm and ways to avoid such harm. Plaintiff has cultivated substantial goodwill and recognition in the CAMPAIGNZERO mark throughout the country. Despite Plaintiff's prior rights in the CAMPAIGNZERO mark, Defendants StayWoke, Inc. ("StayWoke") and We The Protesters, Inc. ("WTP") (collectively, "Defendants") adopted CAMPAIGN ZERO as a trademark that for use with its advocacy program designed to reduce unnecessary harm and death caused during policing. Predictably, Defendants' use of the CAMPAIGN ZERO mark has caused significant actual confusion in the marketplace, the frequency of which has drastically increased in the last three months, and continues to persist. In light of this ongoing and increasing confusion, the continued likelihood of confusion, and the resulting harm to Plaintiff's business and trademark caused by Defendants' actions, the balance

of harms favors temporary injunctive relief. Plaintiff requests this Court to temporarily restrain and preliminarily enjoin Defendants from using the CAMPAIGN ZERO mark.

I.  **FACTUAL BACKGROUND**

    a.  **Plaintiff And Its CAMPAIGNZERO Mark**

Plaintiff is a not-for-profit organization founded by Karen Curtiss in 2009 dedicated to educating hospital patients' families (their advocates) about preventable harm, common hospital errors and ways to reduce such incidents. (Ex. A, Declaration of Karen Curtis at ¶ 2.)[1] Since 2009, Plaintiff and its predecessors (collectively "CampaignZERO") have invested substantial time, money, and other resources promoting the CAMPAIGNZERO mark and CAMPAIGNZERO branded goods and services to individuals nationwide. (*Id*., ¶ 24.) CampaignZERO prominently displays its CAMPAIGNZERO mark on its website (accessible at the campaignzero.com and campaignzero.org domain names), its Facebook page (Facebook.com/CampaignZERO), its Twitter account (Twitter.com/CampaignZERO), on its checklists, webinars, community education presentations, flyers, videos and letterhead in connection with its goods and services. (*Id*., ¶¶ 8-11, 13-15, 19-21.) Additionally, starting in 2011, Ms. Curtiss began speaking at medical and nursing conferences throughout the country on the topic of patient safety and preventing medical care harm on behalf of CampaignZERO where she has been introduced and identified as the founder of CampaignZERO and continues to do so. (*Id*., ¶ 18.)

---

[1] Ms. Curtiss formed CampaignZero, LLC, an entity organized under the laws of Illinois, on February 4, 2009. (Ex. A, ¶ 3.) CampaignZERO, LLC was dissolved in 2015; and, CampaignZERO, LLC was organized under the laws of South Carolina in 2017. (*Id*., ¶ 4.) In 2019, CampaignZero, Inc. (the plaintiff in this action) was formed as a not-for-profit corporation organized under the laws of Illinois. (*Id*., ¶ 5) CampaignZero, Inc. acquired all rights in and to the CAMPAIGNZERO trademark, which has been used continuously since its adoption in 2009. (*Id*.)

As a result of CampaignZERO's tireless efforts promoting its educational programs and services continuously since 2009, CampaignZERO has developed considerable awareness and recognition of the CAMPAIGNZERO mark on both a regional and national scale by as early as 2010. (Ex. A, ¶ 16) Notably, CampaignZERO has received local and national press coverage, including media mentions and has been featured in news articles in publications such as USA Today, Chicago Tribune, Pro Publica, and the Washington Post, to name a few. (*Id.* ¶ 16.)

Since long before Defendants' adoption of the CAMPAIGNZERO mark, CampaignZERO has partnered with hospitals and other care facilities to provide workshops for medical professionals on reducing medical care harm to patients and has provided those services under the CAMPAIGNZERO trademark and distributed materials bearing the CAMPAIGNZERO trademark. (Ex. A, ¶ 19.) In fact, CampaignZERO has provided such workshops to some of the nation's most well respected hospital systems, including Johns Hopkins Medicine, Boston Medical Center, Kaiser Permanente, University of Texas Medical Branch and Providence Medical Center, among many others. (*Id.*, ¶ 20.)

b.  **Defendants And Their Infringing Conduct**

StayWoke is a not-for-profit organization that describes itself as a "digital accelerator that engages thousands of learners, builders, and activists in the work of advancing equity and justice in America." (Ex. B, ¶ 1.) Despite CampaignZERO's prior rights to the CAMPAIGNZERO mark, on August 18, 2015, Defendants or one of Defendants' agents registered the domain name joincampaignzero.org. (Ex. B, ¶ 5.) In addition, on August 23, 2015, StayWoke filed a federal trademark application to register the trademark CAMPAIGN ZERO in class 35 for use in connection with "Public advocacy to promote awareness of Social Justice," and in that

application, claimed that it first used the CAMPAIGN ZERO mark in United States commerce on August 21, 2015. (Ex. B, ¶ 6.)[2]

Defendants have used and continue to use the CAMPAIGN ZERO mark to offer their services to advocate for changes to reduce unnecessary harm and death caused during policing. (Ex. B, ¶¶ 8-13.) Defendants operate a website at the domain name joincampaignzero.org, which displays the CAMPAIGNZERO mark, and identifies "Campaign Zero" as "a project of the non-profit 501(c)(3) organization, WeTheProtesters." (*Id*., ¶ 9.) In addition, Defendants promote their services and solicit donations under the CAMPAIGN ZERO mark on social media, including on their Facebook page titled "Campaign Zero". (*Id*., ¶ 12.) That Facebook page provides functionality for users to create their own Facebook campaigns to solicit donations using the CAMPAIGN ZERO mark. (*Id*., ¶ 13.) Confusingly, the Facebook page prominently displays the CAMPAIGN ZERO mark, but not "WeTheProtestors" or "StayWoke."

Defendants' unauthorized use of the CAMPAIGN ZERO mark has resulted in several instances of actual confusion in the marketplace including the following.

- Plaintiff has received several voice mail, email messages, and live phone calls from people asking to contact Defendants. (Ex. A, ¶ 28-29.)

- On or around June 19, 2020, a Facebook user posting on Defendants' Campaign Zero titled Facebook page expressed confusion between Defendants' services and Plaintiff's services while trying to set up a Facebook fundraiser stating: "the one that shows up when I try to create a FB Fundraiser for Campaign Zero is called campaignzero from Lake Forest, IL. Is that correct?" (*Id*., ¶ 30.)

---

[2] Plaintiff is filing a Petition to Cancel StayWoke's Trademark Registration, No. 4,950,792 for the CAMPAIGN ZERO mark with the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, contemporaneously herewith on the basis of priority and likelihood of confusion.

4

- From May through July of 2020, Plaintiff received over a dozen checks by mail, totaling approximately $13,000, intended for Defendants, which Plaintiff turned over to Defendant on August 3, 2020. (*Id.*, ¶ 31.)

- In September of 2020, Plaintiff received three additional donation checks that were intended to be sent to "We The Protesters" and "DeRay McKesson" (a founder of StayWoke, Inc.). (*Id.*, ¶ 32.)

- A patient advocate who maintains a list of health care "Resources" on her website mistakenly included the link to Defendants' joincampaignzero.org website instead of Plaintiff's campaignzero.org website. (*Id.*, ¶ 33.)

The instances of actual confusion caused by Defendants' use of the CAMPAIGN ZERO mark have drastically escalated over the past two to three months. (*Id.*, ¶ 34.)

Such actual and likely confusion has materially harmed Plaintiff, the goodwill that CampaignZERO has established in its CAMPAIGNZERO trademark and the ability of the CAMPAIGNZERO trademark to serve as a source indicator of Plaintiff's services. (Ex. A, ¶ 35.) For example, one hospital system with which CampaignZERO has partnered for nearly a decade paused work on the website page it was developing to offer Plaintiff's services and resources for hospital patients and families due to the risk that it will confuse the hospital's patients and others who visit their site into believing that there is an affiliation with Defendants' or their services. (*Id*, ¶ 36.) In addition, Ms. Curtiss has had to discontinue use of her email address, Karen@CampaignZERO.org, because, over the past few months, emails from that email address have repeatedly been identified as a SPAM by recipients' SPAM filters, likely because the email domain "campaignzero.org" has generated confusion. (*Id*, ¶ 37.) This has harmed Plaintiff's ability to reach its customers and partners through email communications. (*Id.*)

## II. LEGAL STANDARDS

To obtain a temporary restraining order ("TRO") or a preliminary injunction under Fed. R. Civ. P. 65, a moving party must demonstrate that (1) it has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if temporary relief is denied. *Eli Lilly and Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018); *Ty, Inc. v. Jones Group*, 237 F. 3d 891, 895 (7th Cir. 2001). Once these are shown, the court then considers any irreparable harm the temporary restraining order or preliminary relief would cause the non-moving party, balanced against the irreparable harm the moving party would suffer if relief is denied. *Id.* Finally, the court considers the public interest in granting or denying the temporary restraining order or preliminary injunction. *Id.* The court applies a "sliding scale" approach under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Id.* In this case, all of the factors warrant the granting of Plaintiff's motion for a Temporary Restraining Order and Preliminary Injunction against Defendants.

## III. THE COURT SHOULD ENJOIN DEFENDANTS' USE OF THE CAMPAIGN ZERO MARK

### a. Plaintiff Is Likely To Succeed On The Merits

Plaintiff is likely to succeed on its trademark infringement and unfair competition claims under the Lanham Act and Illinois state law causes of action. To prevail on these claims, Plaintiff must show that (1) its CAMPAIGNZERO mark is protectable, and (2) Defendants' use of the CAMPAIGN ZERO mark is likely to cause confusion. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000); *Ty,* 237 F.3d at 897. There is substantial evidence establishing these elements and that Plaintiff will succeed on its claims.

### b. Plaintiff Has Prior Valid Rights To The CAMPAIGNZERO Mark

"It has long been held that trade or service mark rights are acquired by appropriation and use, not by registration." *Heinemann v. General Motors Corp.*, 342 F. Supp. 203, 206 (N.D. Ill. 1972); *see also Zazu Designs v. L'Oreal, SA*, 979 F.2d 499, 503 (7th Cir. 1992) ("Only active use allows consumers to associate a mark with particular goods and notifies other firms that the mark is so associated."); *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 146 F.3d 350, 357 (6th Cir. 1998) ("One of the bedrock principles of trademark law is that trademark or "service mark ownership is not acquired by federal or state registration. Rather, ownership rights flow only from prior appropriation and actual use in the market.").

As detailed above, CampaignZERO first used the CAMPAIGNZERO mark in 2009 and established nationwide rights in the mark well before Defendants used or applied to register the CAMPAIGN ZERO mark in August 2015. (Ex. A, ¶ 2; Ex. B, ¶ 6.) By virtue of CampaignZERO's continuous and extensive use of the CAMPAIGNZERO mark since 2009, Plaintiff has established that it has valid and prior rights in the mark.

### c. Defendants' Use Of the CAMPAIGN ZERO Mark Creates A Likelihood of Confusion

"The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, affiliation, connection, or sponsorship of goods or services among the relevant class of customers or potential customers." *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 957 (7th Cir. 1992). In assessing whether a likelihood of confusion exists, courts consider: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products or services; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent, or lack thereof, to palm off its goods or services as those of the

plaintiff. *Ty*, 237 F.3d at 897; *Roulo v. Russ Berrie & Co.*, 886 F.2d 931, 935 (7th Cir. 1989). These factors are "not a mechanical checklist, and 'the proper weight given to each . . . will vary from case to case.'" *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000) (citing *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996)). However, the Seventh Circuit has noted, "the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations." *Id*.

An examination of these factors in this case clearly shows that Plaintiff is likely to succeed on the merits of establishing that there is a strong likelihood of confusion and certainly has a "'better than negligible' chance, indeed a significant likelihood, of eventually succeeding" on its unfair competition trademark claims. *See Victor Prods., Inc.*, 1994 WL 130769 at *2 (granting TRO).

### i. The Parties' marks are identical

It is well-established that marks must be "compared in light of what occurs in the marketplace," and examined for "similarity in appearance and suggestion." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1087-88 (7th Cir. 1988). Here, Plaintiff's CAMPAIGNZERO mark and Defendants' CAMPAIGN ZERO mark are identical. Accordingly, this factor weighs heavily in favor of a finding of likelihood of confusion.

### ii. Defendants' use of the CAMPAIGN ZERO mark has already resulted in several instances of actual confusion

Under trademark law, "the plaintiff need not show actual confusion in order to establish likelihood of confusion." *Sands, Taylor & Wood Co.*, 978 F.2d at 960. However, when present, such proof is "entitled to substantial weight in the likelihood of confusion analysis." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001). Indeed, just "[o]ne instance of actual confusion has been deemed sufficient to weigh in favor of finding a likelihood of confusion." *Id*.

8

at 686. As the Seventh Circuit noted, "reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof." *Int'l Kennel Club*, 846 F.3d at 1089.

As detailed above, Defendants' unauthorized use of the CAMPAIGN ZERO mark has already resulted in significant actual confusion in the marketplace, including several misdirected communications and donations. (Ex. A, ¶¶ 28-29, 31-32, 39.) Although Defendants have purportedly been using the CAMPAIGN ZERO mark since 2015, the actual confusion caused by Defendants' use of the mark has drastically escalated over the past two to three months. (*Id.*, ¶ 34.) Presumably, this sharp rise in actual confusion is due to the Defendants' increased visibility in the marketplace due to the several recent high-profile incidents in the summer of 2020 where individuals were killed or harmed during interactions with police, which is the very thing Defendants aim to eliminate. The actual confusion is ongoing, and, thus, this factor weighs heavily in favor of a finding of likelihood of confusion.

      **iii.    Defendants' Bad Faith**

"One entering a field already occupied by another has a duty to select a [mark] that will avoid confusion." *Watkins Prods., Inc. v. Sunway Fruit Prods., Inc.*, 311 F.2d 496, 499 (7th Cir. 1962). Defendants failed to do so. Defendants' selection of the "joincampaignzero.org" domain name is strong circumstantial evidence that Defendants had actual knowledge of CampaignZERO and its use of the CAMPAIGNZERO mark prior to adopting and applying to register the CAMPAIGN ZERO trademark. Presumably, Defendants' registered the joincampaignzero.org domain name rather than campaignzero.com or campaignzero.org because they discovered those domain names were unavailable and registered to and being used by CampaignZERO. Notably, Defendants display the CAMPAIGN ZERO mark all over their

websites – not "joincampaignzero". Moreover, CampaignZERO has prominently displayed its CAMPAIGNZERO mark on its website with the ™ superscript signifying to all would-be infringers that CampaignZERO owns trademark rights in that mark. It defies logic to think that the Defendants did not visit CampaignZERO's website and view its use of the CAMPAIGNZERO mark with the ™ superscript upon discovering CampaignZERO's registered domain names. Accordingly, this Court should find that the intent factor favors Plaintiff.

### iv. The Parties' services are closely related

"In assessing the relatedness of the goods and/or services, the more similar the marks, the less similar the goods or services need to be to find a likelihood of confusion." TMEP § 1207.01(a) (citing *In re Shell Oil Co.*, 992 F.2d 1204, 1207 (Fed. Cir. 1993)). It is also well-established that "the goods and/or services do not have to be identical or even competitive in order to find that there is a likelihood of confusion." *Id.* at § 1207.01(a)(i); *James Burrough Ltd.*, 540 F.2d at 275 ("[L]ikelihood of confusion of consumers, does not require the contending parties before the court be even in competition."). The issue is not whether the goods and/or services will be confused with each other, but rather whether the public will be confused as to their source. TMEP § 1207.01 (a)(i) (citing *Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000)); *AutoZone, Inc. v. Strick*, 543 F.3d 923, 931 (7th Cir. 2008).

Here, Plaintiff's and Defendants' services, while not identical, are certainly related. They are all non-profit organizations that aim to bring awareness to social causes to the general public. (Ex. A, ¶ 5; Ex B., ¶¶ 3, 4, 8.) They all also offer educational and advocacy services intended to protect people from harm and danger. (Ex. A, ¶ 2; Ex B., ¶ 8.) In addition, both parties solicit donations from the general public, which has resulted in considerable confusion. (Ex. A, ¶¶ 38-39; Ex B., ¶ 12.)

    v.  **Area and manner of concurrent use**

The Court should also consider "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Ariel Invs.*, 230 F. Supp. 3d at 861 (citing *CAE*, 267 F.3d at 681). Here, Plaintiff and Defendants heavily promote their respective services online through their websites and social media accounts on a nationwide basis to the general public, and therefore the area and manner of their use of their respective marks overlap. (Ex. A, ¶¶ 9-10, 13; Ex. B, ¶¶ 10-13.)

Although CampaignZERO's use of the CAMPAIGNZERO mark and Defendants' use of the CAMPAIGN ZERO mark have coexisted for several years, as described above, there has been a dramatic increase in actual confusion in the marketplace over the past two to three months caused by Defendants' use of the CAMPAIGN ZERO mark. (Ex. A, ¶ 34.) This ongoing confusion of the public, along with the harm to Plaintiff, shows that co-existing uses of Plaintiff's CAMPAIGNZERO mark and Defendants' CAMPAIGN ZERO mark is not feasible. *Int'l Kennel*, 846 F.2d at 1089 ("There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). As a result, the Court should find that this factor also weighs in favor of finding a likelihood of confusion.

    vi.  **The care exercised by current and potential supporters and donors will not dispel confusion.**

As noted above, Plaintiff and Defendants are both non-profit organizations that aim to bring awareness to social causes to the general public. (Ex. A, ¶ 5, Ex. B, ¶ 3, 4, 8.) Even though those causes do not necessarily overlap, even if potential donors carefully review the parties' websites and the description of their services, it is quite possible, and indeed has happened, they would be confused as to an affiliation and/or association between Plaintiff and Defendants. As the Court noted in *Nat'l Fin. Partners,* the fact that consumers are especially careful in selecting

a services provider does not mean that they would not be confused as to the affiliation between two companies whose names or logos are identical or share a dominant term. 2015 WL 3633987 at *5; *see also Ariel Invs.*, 230 F. Supp. 3d at 862. The several instances of actual confusion that have already occurred due to Defendants' use of the CAMPAIGN ZERO mark makes clear that the members of the general public—even those that are very sophisticated—do not always exercise a great deal of care in distinguishing between Plaintiff and Defendants and their services. *See e.g., Meridian Mutual Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1117 (7th Cir. 1997) (evidence that copies of checks had been mistakenly addressed to defendant instead of plaintiff showed a "lack of care" that "could lead plaintiff's clients to mistakenly contact the defendant."). As such, this factor weighs in favor of a likelihood of confusion.

### vii. The CAMPAIGNZERO mark is strong.

"Strength" refers to a trademark's "propensity to identify the products or services sold as emanating from a particular source." *CAE,* 267 F.3d at 684. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *AutoZone,* 543 F.3d at 933. Plaintiff's CAMPAIGNZERO mark is a distinctive mark that has become well known in the marketplace through CampaignZERO's eleven (11) years of use and public recognition. (Ex. A, ¶ 6.) Accordingly, this factor weighs in Plaintiff's favor.

### d. There Is No Adequate Remedy At Law And Plaintiff Will Suffer Irreparable Injury In The Absence Of Immediate Injunctive Relief

"[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect on a brand of a nontrivial period of consumer confusion." *Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013); *Life After Hate, Inc. v. Free Radicals Project, Inc.*, 410 F. Supp. 3d 891, 909 (N.D. Ill. 2019) (holding in trademark infringement action that "it is well-settled that injuries arising from

Lanham Act violations are presumed to be irreparable, even if the plaintiff fails to demonstrate a business loss") This Court applies a presumption of irreparable harm in trademark infringement actions because "it is virtually impossible to ascertain the precise economic consequences of intangible harms, such as damage to reputation and loss of goodwill, caused by such violations." *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR. LLC*, 703 F.Supp. 2d 777, 790 (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992)).

Even absent these presumptions, as a result of Defendants' use of the CAMPAIGN ZERO mark, Plaintiff has suffered and will continue to suffer irreparable harm in several ways without an adequate remedy at law, which puts Plaintiff's CAMPAINZERO mark, goodwill and reputation at risk. Notably, the holiday season—including "Giving Tuesday" on December 1, 2020, is quickly approaching, and is traditionally the time when non-profits receive a large proportion of annual donations. (Ex. A, ¶ 38.) Defendants' continued use of the CAMPAIGN ZERO mark is and will continue to divert donations intended for Plaintiff to Defendants, which will have a significant and detrimental impact on Plaintiff. *See Ty*, 237 F.3d at 903 ("[Plaintiff] stands to suffer significantly if a preliminary injunction is not entered, as Plaintiff could lose control of its reputation and goodwill. Plaintiff would risk losing years of nurturing its business."). In addition, as noted above, one hospital partner has already paused work on a program with Plaintiff because of its concern regarding patient confusion. (Ex. A, ¶ 36.)

  e. **The Balance Of Equities Tips Sharply In Plaintiff's Favor, And An Injunction Would Serve The Public Interest.**

The harm to Plaintiff if temporary and preliminary relief is not ordered is significant, and under the "sliding scale approach," Plaintiff's strong likelihood of success renders any speculative harm to Defendants afforded little, if any, weight. *Girl Scouts of Manitou Council, In*c. v. Girl Scouts of U.S.A., 549 F.3d 1079, 1096 (7th Cir. 2008) ("sliding scale: [t]he more

13

likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor"). Indeed, any harm to Defendants by the issuance of temporary or preliminary relief is harm that they brought upon themselves by adopting and applying to register the CAMPAIGN ZERO mark despite being aware of CampaignZERO and its prior use of the CAMPAIGNZERO mark.

When assessing the relative impact of the harms between the parties, the Court should exclude the burden Defendants "voluntarily assumed by proceeding in the face of known risk." *Lettuce Entertain You*, 703 F.Supp. at 791 (quoting *Ty*, 237 F.3d at 903) (infringer's "claim of irreparable harm rings hollow" because it knew of the "potential consequences" of using plaintiff's mark). Defendants had a "responsibility to avoid confusion in its choice of a trademark." *Personeta, Inc. v. Persona Software, Inc.*, 418 F.Supp. 2d 1013, 1020 (N.D. Ill. 2005). Thus, Defendants, not Plaintiff, should bear the burden of their failure to meet this responsibility.

Plaintiff's requested temporary and preliminary relief serves the public interest by nipping likelihood of confusion—indeed, actual confusion—caused by Defendants' continued use of the CAMPAIGN ZERO mark in the bud. *See Lettuce Entertain You*, 703 F.Supp. at 791. In trademark actions, the public interest favors the issuance of a TRO where it will prevent consumer confusion. *see Int'l Kennel Club*, 846 F.2d at 1092 ("[T]he relevant consideration [in determining whether the public interest will be disserved by the grant of an injunction] is the consumer's interest in not being deceived about the products they purchased."). Accordingly, the public interest favors temporary and preliminary injunctive relief here to avoid continued confusion.

14

**IV.     This Court Should Require Plaintiff To Post Only A Minimal Bond**

Rule 65(c) requires a party obtaining a temporary restraining order to post a bond sufficient to "pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The purpose of requiring a bond is to compensate the defendant for the harm caused by the improper issuance of a temporary relief or preliminary injunction should the defendant ultimately prevail. *Ty*, 292 F.3d at 516. The strength of Plaintiff's case for the issuance of a temporary restraining order and preliminary injunction warrants the Court exercising its discretion to require no bond because Defendants will not suffer damage, but, at most, a minimal amount to compensate Defendants for its enjoined use of the CAMPAIN ZERO mark. *See Fiji Water Co. v. Fiji Mineral Water USA*, 741 F.Supp. 2d 1165, 1184 (C.D. Cal. 2010).

**V.     Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this Court issue a temporary restraining order and preliminary injunction in the form set forth in the Proposed Order filed contemporaneously herewith.

Respectfully submitted,

Dated: November 13, 2020

*/s/ Megan Krivoshey*
Michael Carrillo (Illinois Bar No. 62368915)
John A. Cullis (Illinois Bar No. 6273415)
Lawrence E. James (Illinois Bar No. 6289823)
Megan Krivoshey (Illinois Bar No. 6324823)
Joshua S. Frick (Illinois Bar No. 6292843)
BARNES & THORNBURG LLP
One North Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: 312-357-1313
Email: John.Cullis@btlaw.com
Email: Lee.James@btlaw.com
Email: Joshua.Frick@btlaw.com
Email: Mkrivoshey@btlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 13, 2020, a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctions was served on Defendants' counsel by via email as follows:

>Matthew Melewski
>The Boutique Firm PLC
>5115 Excelsior Blvd, #431
>St. Louis Park, MN 55416
>matthew@theboutiquefirm.com

>/s/    *Joshua S. Frick*