# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CampaignZERO, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-06765 |
| | ) |
| StayWoke, Inc. and We The Protesters, Inc., | ) Judge Franklin U. Valderrama |
| | ) |
| Defendants. | ) Magistrate Judge Sheila M. Finnegan |
| | ) |
| | ) |
| | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY

LOEB & LOEB LLP

Douglas N. Masters
321 North Clark Street, Suite 2300
Chicago, Illinois 60654
Tel.: 312-464-3100
Fax: 312-464-3111

Frank D. D'Angelo (*pro hac vice* pending)
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
Fax: (212) 407-4990

*Attorneys for Defendants*

19814735

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ............................................................................................................................4

    I.    Plaintiff's Motion for Expedited Discovery Should Be Denied .............................4

        A.    Plaintiff's Motion for Preliminary Injunction on Its Face Demonstrates a Lack of Irreparable Harm .....................................................4

        B.    Plaintiff's Requested Discovery Is Unduly Broad and Would Impose a Disproportionate Burden on Defendants ......................................8

        C.    Plaintiff Fails to Articulate Any Legitimate Purpose for Expedited Discovery ...............................................................................10

        D.    Plaintiff Seeks Discovery Far in Advance of When Discovery Would Normally Proceed ..........................................................................12

    II.    If Plaintiff's Motion Is Granted, Defendants Should Be Permitted to Take Expedited Discovery of Plaintiff .................................................................12

CONCLUSION ......................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.*,
    307 F. Supp. 3d 260 (S.D.N.Y. 2018) ............................................................................. 6-7

*CreAgri, Inc. v. USANA Health Scis., Inc.*,
    474 F.3d 626 (9th Cir. 2007) ............................................................................................. 8

*Ibarra v. City of Chicago*,
    816 F. Supp. 2d 541 (N.D. Ill. 2011) ........................................................................... 4, 10

*Medic Alert Found. United States v. Corel Corp.*,
    43 F. Supp. 2d 933 (N.D. Ill. 1999) ................................................................................... 7

*Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*,
    194 F.R.D. 618 (N.D. Ill. 2000) ..................................................................................... 4, 5

*Nike, Inc. v. "Just Did It" Enters.*,
    6 F.3d 1225 (7th Cir. 1993) ............................................................................................... 7

*Orlando v. CFS Bancorp, Inc.*,
    No. 2:13-cv-261 JD, 2013 U.S. Dist. LEXIS 202864 (N.D. Ind. Oct. 10, 2013) ............. 12

*Phila. Newspapers v. Gannett Satellite Info. Network*,
    No. 98-CV-2782, 1998 U.S. Dist. LEXIS 10511 (E.D. Pa. July 15, 1998) ...................... 10

*Pod-Ners, LLC v. N. Feed & Bean of Lucerne, LLC*,
    204 F.R.D. 675 (D. Colo. 2002) ...................................................................................... 10

*Share Corp. v. Momar, Inc.*,
    No. 10-CV-109, 2010 U.S. Dist. LEXIS 24653 (E.D. Wi. Feb. 26, 2010) .................... 4-5

*Ty, Inc. v. Jones Grp., Inc.*,
    98 F. Supp. 2d 988 (N.D. Ill. 2000) ................................................................................... 7

**Statutes**

Lanham Act, 15 U.S.C. §§ 1051 et seq. ..................................................................................... 6, 7

**Other Authorities**

Fed. R. Civ. P. 26(d) ..................................................................................................................... 4

Fed. R. Civ. P. 26(f) ...................................................................................................................... 4

## **INTRODUCTION**

Defendants StayWoke, Inc. ("Stay Woke") and We The Protesters, Inc. ("WTP") are non-profit organizations dedicated to ending racism and police violence nationwide. In 2015, WTP launched a project called "Campaign Zero" to support research regarding policing practices, to provide assistance to organizers leading police accountability campaigns, and to develop model legislation and advocacy to end police violence. Stay Woke applied to register the trademark for CAMPAIGN ZERO (the "Mark") with the U.S. Patent and Trademark Office on August 23, 2015, and the Mark was subsequently registered on May 3, 2016. (Declaration of Frank D'Angelo ("D'Angelo Decl."), Ex. A). At the time, Plaintiff did not exist. Plaintiff's predecessor, a for-profit entity called CampaignZERO LLC, also did not exist: it had been involuntarily dissolved by the State of Illinois on August 14, 2015. (*Id*. Ex. B).

Since August 2015, Defendants have used the Mark in connection with their non-profit activities. For the past several years, Plaintiff has publicly supported Defendants' use of the Mark. For example, on January 23, 2017, Plaintiff publicly communicated to its supporters that it backs WTP's "Campaign Zero" project, having expressed support for the project on Plaintiff's Facebook page and having directed its own supporters to WTP's "Campaign Zero [Facebook] group, sponsored by Black Lives Matter." (*Id*. Exs. C-D). It would be two more years—and more than three years after Defendants started using the Mark—before Plaintiff incorporated as a non-profit and started using the Mark in a non-profit context. (*Id*. Ex. E) (Plaintiff's Not For Profit Articles of Incorporation, filed January 4, 2019).

Plaintiff's public support for Defendants and the "Campaign Zero" project has continued since 2017 and extended into this year. As recently as June 2, 2020—well after Plaintiff alleges that recent instances of consumer confusion purportedly began—Plaintiff yet again lauded WTP's

19814735

"Campaign Zero" project on its Facebook page and directed its followers to WTP's "Campaign Zero" project website, writing:

> We at CampaignZERO, FAMILIES FOR PATIENT SAFETY, support #BlackLivesMatter Campaign Zero! Stay up to date with their activities, policy solutions and action plans at "https://joincampaignzero.org". Find them on Facebook at JoinCampaignZero.

(*Id.* Ex. F). That same day (June 2, 2020), Plaintiff posted a similar message to its Twitter feed, telling its followers:

> Looking for #BlackLivesMatters? [*sic*] Go to JOINcampaignZero.org. Our organization (similar name) is all about #patientsafety and @MsPackyetti[1] and JoincampaignZero.org are all about ensuring safety for all #BlackLivesMatters. [*sic*] We stand with [Campaign Zero.]

(*Id.* Ex. G). At no point during this period did Plaintiff even attempt to register CAMPAIGN ZERO as a service mark.

Notwithstanding the fact that Plaintiff has been aware of Stay Woke's Mark since at least January 2017—and has publicly supported Defendants' use of the Mark repeatedly over the past four years—Plaintiff waited until November 2020 to sue Defendants and move for a temporary restraining order and preliminary injunction.

This Court has already determined that Plaintiff has "fail[ed] to demonstrate the nature of the emergency" alleged in its motion for injunctive relief, having denied Defendants' motion *sua sponte* on November 16, 2020. (Dkt. No. 10). Although Plaintiff has re-filed its motion for injunctive relief, it has offered no additional facts or information as to the "nature of the emergency," and its accompanying motion for expedited discovery appears to be nothing more

---

[1] The Twitter feed @MsPackyetti is operated by Brittany Packnett, a co-founder of WTP's "Campaign Zero" project. *See* Twitter, "this is a jingle jangle stan account," https://twitter.com/MsPackyetti (last accessed Dec. 1, 2020).

19814735                                    2

than a belated attempt to manufacture such an emergency out of facts already found to be inadequate by the Court. Plaintiff states only in conclusory fashion that it will be harmed by "Defendants' continued use of the mark during the upcoming holiday giving season" (Dkt. No. 18 ("Disc. Mtn.") ¶ 27)—but that is the very same basis on which Plaintiff sought a temporary restraining order and which the Court rejected as insufficient for emergency relief (Dkt. No. 7 at 13). Plaintiff *still* fails to articulate why the "holiday giving season" presents an emergency, and it fails to provide any explanation as to why it waited until the eve of the 2020 "holiday giving season" to file suit and seek expedited discovery when it has been aware of Defendants' use of the Mark since at least January 2017. Plaintiff cannot rely upon its own dilatory tactics as justification for seeking to force Defendants to divert time, attention, and financial resources away from their own charitable endeavors to engage in intensive document discovery within an unreasonably condensed timeframe.

More broadly, Plaintiff has failed to demonstrate the need for *any* discovery in connection with its motion for a preliminary injunction—whether on an expedited basis or in the normal course. Plaintiff states in conclusory fashion that "additional discovery from Defendants is warranted so that Plaintiff can provide the Court with a fuller record" (Disc. Mtn. ¶ 24), but it does not point to any evidence exclusively within Defendants' possession that it needs to support its motion. The *sole* basis for Plaintiff's motion for injunctive relief is purported harm to its own business—which (to the extent that such harm actually exists) Plaintiff is already aware of and which is documented in records already within Plaintiff's possession. Stripped of its surplusage, Plaintiff's request boils down to: give us discovery now because we want it. This request should be denied, for the reasons set forth below.

# ARGUMENT

## I. Plaintiff's Motion for Expedited Discovery Should Be Denied

Plaintiff seeks expedited discovery pursuant to Federal Rule of Civil Procedure 26(d), which provides that a party may seek discovery prior to a Rule 26(f) conference "by court order." "Expedited discovery is not the norm." *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000). In determining whether it is appropriate, courts "examine the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all of the surrounding circumstances . . . ." *Id.* at 624. The party seeking discovery bears the burden of showing "'good cause . . . to justify' an expediting discovery order." *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (quoting 8A Charles Alan Wright et al., Federal Practice and Procedure, § 2046.1 (3d ed. 1998)). Several factors may guide the Court's determination as to whether good cause has been shown, including "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery [sought]; (3) the purpose for requesting expedited discovery; (4) the burden on the [opposing party] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Id.*

Plaintiff fails to carry its burden of showing that these factors support its request for expedited discovery, and the entire record to date makes clear that the motion should be denied.

### A. Plaintiff's Motion for Preliminary Injunction on Its Face Demonstrates a Lack of Irreparable Harm

Although Plaintiff suggests that a pending motion for a preliminary injunction is sufficient to support a request for expedited discovery (Disc. Mtn. ¶ 23), this is simply not true. Courts routinely deny motions for expedited discovery where, as here, the claims underlying the preliminary injunction are highly speculative. *See, e.g., Share Corp. v. Momar, Inc.*, No. 10-CV-109, 2010 U.S. Dist. LEXIS 24653, at *6 (E.D. Wi. Feb. 26, 2010) ("[Plaintiff] has failed to

establish the requisite 'good cause' for expedited discovery. Upon a close examination of all of the documents [plaintiff] has submitted, the court can only conclude that all of the plaintiff's allegations are purely speculative at this stage of the litigation and do not justify court ordered discovery prior to any potential hearing on a preliminary injunction."); *Merrill Lynch*, 194 F.R.D. at 623 ("Given that the record to date suggests that the charges leveled by [plaintiff] against [defendant] are 'trumped up' or stretched to make a colorable suit against him, expedited discovery is highly inappropriate.").

Here, in particular, Plaintiff has articulated ***no*** evidence-based argument for why it will purportedly suffer irreparable harm absent a preliminary injunction, instead relying on speculation and innuendo to support its contentions. First, Plaintiff alleges that "one hospital system with which CampaignZERO has partnered for nearly a decade stopped work on the webpage it was developing to offer Plaintiff's services and resources to the hospital's patients and their families due to concerns that *the webpage will confuse the hospital's patients and others who visit their site* into believing that there is an affiliation with Defendants' or their services." (Dkt. No. 15 ("PI Mtn.") at 5) (emphasis added). This allegation pleads no actual or likely confusion resulting from Defendants' conduct. At most, it amounts to rank speculation and hearsay by a third party ("one hospital system") that other third parties (website visitors) may, at some undetermined point in the future, potentially become confused.

Second, Plaintiff alleges "Ms. Curtiss has had to discontinue use of her email address, Karen@CampaignZERO.org, because, over the past few months, emails from that email address have repeatedly been identified as a SPAM by recipients' SPAM filters, *likely because "campaignzero" is attached to two different .org URLs.*" (PI Mtn. at 5) (emphasis added). This allegation also amounts to rank speculation. Plaintiff proffers no factual basis for concluding that

the *actual* reason why Ms. Curtiss' emails are being routed to third-party spam filters is due to the purported similarity in URLs, instead theorizing that this is the "*likely*" cause. In reality, there are any number of other, more plausible explanations for why Ms. Curtiss' emails are being marked as spam—including that third parties may simply be uninterested in donating to Plaintiff's hospital checklist organization.

Third, Plaintiff does not allege that it has actually lost any charitable donations as a result of Defendants' conduct nor that it will lose any charitable donations absent injunctive relief. Plaintiff alleges only that donation checks and other correspondence *intended for Defendants* have been *misdirected to Plaintiff*—not the other way around. (PI Mtn. at 4-5) ("Plaintiff has received several voice mail, email messages, and live phone calls from people *asking to contact Defendants* . . . From May through July of 2020, Plaintiff received over a dozen checks by mail . . . *intended for Defendants* . . . In September of 2020, Plaintiff received three additional donation checks that were *intended to be sent to 'We The Protesters' and 'DeRay McKesson'* (a founder of StayWoke, Inc.).") (emphasis added). Even if Plaintiff had alleged that donations intended for it had been misrouted to Defendants, this still would not constitute *irreparable* harm, since such donations could be identified, quantified, and returned to Plaintiff.

In any event, the mistaken transmission of donation checks alone cannot support a finding of a likelihood of confusion, and Plaintiff therefore cannot demonstrate a likelihood of success on the merits by reference to such checks. At least one other court has held that the misdirection of donation checks from one similarly named charity to another did not support a Lanham Act claim because the checks at most indicated a mere mistake on the part of donors regarding the charities' names. *See Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 296 (S.D.N.Y. 2018) (entering judgment against plaintiff Alzheimer's

Disease and Related Disorders Association and in favor of defendant Alzheimer's Foundation of America on plaintiff's claim that defendant's use of the two-word name "Alzheimer's Foundation" constituted trademark infringement and false designation of origin under the Lanham Act); *see also Ty, Inc. v. Jones Grp., Inc.*, 98 F. Supp. 2d 988, 1001 (N.D. Ill. 2000) ("isolated instances of actual confusion or misdirected mail have been held insufficient to sustain a finding of likelihood of confusion") (citation omitted). The core inquiry on a Lanham Act claim is not whether consumers are likely to mistakenly confuse two similar-sounding terms or entity names—but rather whether consumers "would likely believe that [the defendant's product or service] is 'in some way related to, or connected or affiliated with, or sponsored by,' the plaintiff." *Nike, Inc. v. "Just Did It" Enters.*, 6 F.3d 1225, 1228 (7th Cir. 1993) (citation omitted); *see Medic Alert Found. United States v. Corel Corp.*, 43 F. Supp. 2d 933, 937-938 (N.D. Ill. 1999) ("[T]he relevant confusion is whether the customer would believe that [plaintiff] sponsored, endorsed or was otherwise affiliated with [defendant's] software."). Here, Plaintiff provides no evidence whatsoever that donors are likely to believe that Plaintiff sponsors, endorses, or is affiliated with Defendants' non-profit services. This is unsurprising, since the parties' charitable aims—reducing preventable medical error in hospitals versus ending police violence and systemic racism—are wholly dissimilar.

Fourth, Plaintiff alleges that "[a] patient advocate who maintains a list of healthcare 'Resources' on her website mistakenly included the link to Defendants' joincampaignzero.org website instead of Plaintiff's campaignzero.org website." (PI Mtn. at 5). But, yet again, Plaintiff fails to allege that it has lost, or will lose, any donations as a result of this unnamed patient advocate's mistake, and fails to allege that this patient advocate was confused into believing that Plaintiff sponsored Defendants' non-profit activities.

Ultimately, even assuming that Plaintiff could demonstrate that donors are likely to be confused into believing that Plaintiff sponsors Defendants' non-profit activities, such confusion (to the extent it exists) is likely attributable to *Plaintiff's* actions—not Defendants'. As noted above, it was *Plaintiff* that publicly drew a connection between the parties' uses of the Mark by directing its own Facebook and Twitter follows to Defendants' websites in January 2017 and June 2020. Perhaps more critically, it was *Plaintiff* that used the Mark to capitalize off of Defendants' non-profit activities—not the other way around. Plaintiff claims that confusion is likely because Plaintiff and Defendants are "all non-profit organizations that aim to bring awareness to social causes to the general public" (PI Mtn. at 10); but, Defendants applied to use the Mark for non-profit purposes on August 23, 2015—over a week *after* Plaintiff's predecessor entity had been involuntarily dissolved by the State of Illinois on August 14, 2015, and over three years *before* Plaintiff first incorporated as a non-profit on January 4, 2019.[2] Plaintiff obviously cannot seek injunctive relief when its own conduct has caused the very confusion that it claims exists.

For all these reasons, Plaintiff's pending motion for a preliminary injunction does not support its request for expedited discovery.

    **B.**    **Plaintiff's Requested Discovery Is Unduly Broad and Would Impose a Disproportionate Burden on Defendants**

Both the breadth of the discovery sought by Plaintiff and the burden on Defendants to comply therewith weigh heavily against Plaintiff's motion. Plaintiff describes its proposed discovery requests as "narrowly tailored" (Disc. Mtn. ¶ 25), but even a cursory look at the requests

---

[2] To the extent that Plaintiff was soliciting donations using the Mark prior to formally incorporating as a non-profit in January 2019, its solicitation activities and corresponding use of the Mark may have been unlawful, and it would lose any priority it claims to have with respect to the Mark. *See CreAgri, Inc. v. USANA Health Scis., Inc.*, 474 F.3d 626, 630 (9th Cir. 2007) ("[O]nly *lawful* use in commerce can give rise to trademark priority.").

reveals they are anything but narrowly tailored. Plaintiff seeks to serve 12 document requests seeking all manner of records regarding potential consumer confusion, Defendants' use of the Mark, Defendants' knowledge of Plaintiff's use of the Mark, and Plaintiff's potential damages. Those requests are not remotely aimed at seeking specific, reasonably identifiable documents, nor would they permit Defendants to produce documents "sufficient to show" certain facts or information. Instead, Plaintiff seeks to have Defendants search through every corporate record in a desperate attempt to locate information that may prop up its speculative motion for injunctive relief. For example, Plaintiff seeks ***all documents, without any time limitation,*** regarding "any confusion, by word or deed" between the parties, their respective goods and services, their respective websites, and their respective social media pages; ***all documents, without any time limitation,*** regarding Defendants' decision to select the Mark; ***all documents, without any time limitation***, regarding Defendants' trademark registration; and ***all*** internal and external communications about Plaintiff *without any time limitation*. (Disc. Mtn. Ex. A, at 3-4)

Plaintiff also seeks to serve 10 interrogatories, with multiple subparts, that are arguably broader in scope than its proposed document requests. Plaintiff makes no attempt to tailor these interrogatories to seek identification of specific witnesses, documents, dates, or other data points. Instead, Plaintiff seeks to have Defendants "describe in detail" a variety of decision-making processes, discussions, and events, among other things. For example, Plaintiff proposes that Defendants should have to "*[d]escribe in detail*" all efforts to investigate whether the Mark was available for use or registration; "*[d]escribe in detail*" any advice Defendants received from attorneys regarding use of the Mark; "*[d]escribe in detail*" Defendants' purported awareness of Plaintiffs' use of the Mark; "*[d]escribe in detail*" Defendants' purported awareness of Plaintiff's website domain names; "*[d]escribe in detail*" all reasons for requesting to purchase Plaintiff's

website domain name, "*[d]escribe in detail*" instances of purported confusion between Plaintiff and Defendants (and to include in such descriptions names, dates, and a "recitation" of all related communications and all steps taken in response thereto); and "*[d]escribe in detail*" all efforts undertaken to eliminate or mitigate the purported confusion between Plaintiff and Defendants. (Disc. Mtn. Ex. B, at 3-5) (emphasis added).

This is a far cry from the type of discovery requests typically permitted in connection with a motion for expedited discovery—as Plaintiff's own cases demonstrate. *See, e.g.*, *Ibarra*, 816 F. Supp. 2d at 555 (plaintiff sought expedited discovery for the "limited purpose of determining the identity of the proper parties to this action."); *Pod-Ners, LLC v. N. Feed & Bean of Lucerne, LLC*, 204 F.R.D. 675, 676 (D. Colo. 2002) (plaintiff sought expedited discovery for the purpose of inspecting, sampling, and testing beans and bean plants that were "subject to sale, resale, and consumption or use with the passage of time" and that might no longer be available for discovery at later stages of the case). In view of the overbroad nature of Plaintiff's requested discovery and the undue burden Plaintiff seeks to impose upon Defendants, the motion should be denied. *See Phila. Newspapers v. Gannett Satellite Info. Network*, No. 98-CV-2782, 1998 U.S. Dist. LEXIS 10511, at *6 (E.D. Pa. July 15, 1998) ("courts generally deny motions for expedited discovery when the movant's discovery requests are overly broad").

C. **Plaintiff Fails to Articulate Any Legitimate Purpose for Expedited Discovery**

Where, as here, the party moving for expedited discovery fails to offer a legitimate purpose for proceeding on an expedited basis, the motion must be denied. Plaintiff's motion contains *only one conclusory sentence* as to why discovery should be expedited in this case:

> Without expedited discovery, Plaintiff's ability to protect its rights in the CAMPAIGNZERO mark will be impaired, it will be significantly prejudiced and irreparably harmed by Defendants' continued use of the mark during the upcoming holiday giving season, and it will not be able to develop a complete record for the Court to analyze in deciding Plaintiff's Motion for Preliminary Injunction.

(Disc. Mtn. ¶ 27). This is the *exact same basis* on which Plaintiff filed its motion for a temporary restraining order, in which it stated: "Notably, the holiday season—including 'Giving Tuesday' on December 1, 2020, is quickly approaching, and is traditionally the time when non-profits receive a large proportion of annual donations." (Dkt. No. 7 at 13). The Court has already rejected this is a basis for emergency relief, having denied Plaintiff's motion for a temporary restraining order *sua sponte*. Plaintiff has offered no additional detail to explain why the "holiday giving season" warrants emergency relief. For example, Plaintiff has made no factual showing that *Plaintiff* (as opposed to "non-profits" generally) receives a disproportionate amount of its charitable donations during the holiday giving season, nor has it made any factual showing that donation checks intended for Plaintiff have been misdirected to Defendants (as noted above, Plaintiff alleges only that donation checks intended for Defendants have been misdirected to Plaintiff). Furthermore, by Plaintiff's own admission, the critical date for non-profit donations is December 1, 2020 ("Giving Tuesday"). Plaintiff fails to explain how permitting expedited discovery *after that date* will somehow stave off prejudice and irreparable harm.

But even assuming that Plaintiff had adequately supported its conclusory statements with respect to the "holiday giving season," its motion should still be denied. As noted above, Plaintiff has been aware of Defendants' use of the Mark for *nearly four years* and inexplicably waited until the eve of the 2020 "holiday giving season" to seek injunctive relief and expedited discovery. It cannot now ask the Court to reward its dilatory tactics by granting it the ability to seek overbroad and burdensome discovery from Defendants over the course of *fourteen days*. Courts routinely

19814735

11

deny motions for expedited discovery where the movant has engaged in such delays. *See, e.g., Orlando v. CFS Bancorp, Inc.*, No. 2:13-cv-261 JD, 2013 U.S. Dist. LEXIS 202864, at *7-8 (N.D. Ind. Oct. 10, 2013) (where plaintiff waited five months after becoming aware of the purported emergency to move for expedited discovery, denying the motion due to plaintiff's "unexplained and unwarranted delay"). The Court should do the same here.

### D. Plaintiff Seeks Discovery Far in Advance of When Discovery Would Normally Proceed

Plaintiff's motion seeks discovery well before it would normally proceed in this action. Plaintiff requested, and Defendants agreed, to waive service of the complaint, as a result of which Defendants' time to answer, counterclaim, or move with respect to the complaint was extended from 21 days to 60 days. (D'Angelo Decl. Ex. H). This further underscores the fact that Plaintiff does not genuinely perceive there to be a need for expedited proceedings; it if did, it would have effectuated service on Defendants in the normal course to expedite a response to the complaint within 21 days. At present, Defendants must respond to the complaint by January 12, 2021, and discovery will proceed thereafter. Plaintiff's motion seeks discovery well in advance of that date and should be denied for this additional reason.

### II. If Plaintiff's Motion Is Granted, Defendants Should Be Permitted to Take Expedited Discovery of Plaintiff

Notwithstanding the foregoing, in the event the Court determines that expedited discovery is warranted, Defendants respectfully request that the Court permit them to serve document requests and interrogatories on Plaintiff, with Plaintiff's responses due within the same time frame as Defendants' responses. Plaintiff should not be permitted to take unilateral expedited discovery in connection with its motion for injunctive relief, and, should mutual discovery be permitted, Defendants anticipate seeking discovery regarding, among other things, the nature and extent of

consumer confusion alleged by Plaintiff; the *de minimis* nature of the purported confusion; the extent to which such purported confusion was caused by Plaintiff (as opposed to Defendants); Plaintiff's knowledge of Defendants' use of the Mark and its inaction thereafter; the chain of title with respect to the Mark as between Plaintiff and its predecessor organization(s); earlier uses of the Mark allegedly giving rise to priority; and whether such earlier uses by Plaintiff were lawful or unlawful.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for expedited discovery. In the alternative, should the Court grant Plaintiff's motion, Defendants respectfully request that the Court permit them to serve discovery on Plaintiff within the same time frame applicable to Plaintiff's expedited discovery.

Date: December 1, 2020

Respectfully Submitted,

LOEB & LOEB LLP

By: /s/ *Douglas N. Masters*
Douglas N. Masters
321 North Clark Street, Suite 2300
Chicago, Illinois 60654
Tel.: (312) 464-3100
Fax: (312) 464-3111
Email: dmasters@loeb.com

Frank D. D'Angelo (*pro hac vice* pending)
345 Park Avenue
New York, New York 10154
Tel.: (212) 407-4000
Fax: (212) 407-4990
Email: fdangelo@loeb.com

*Attorneys for Defendants*